In re **APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(D)**

**No. 01 MAG. 1389.**

United States District Court, S.D. New York.

Aug. 20, 2001.

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. by Greg E. Haber, New York City, for Cablevision Systems Corp.

Mary Jo White, United States Attorney by Miriam Rocah, Assistant United States Attorney, New York City, for the United States of America.

## OPINION AND ORDER

GORENSTEIN, United States Magistrate Judge.

On July 24, 2001, this Court issued an order pursuant to 18 U.S.C. § 2703(d), requiring Cablevision Systems Corp. ("Cablevision") to provide information to the United States concerning a subscriber to Cablevision's cable internet service. Cablevision has now moved to quash or modify this order. For the reasons stated below, Cablevision's motion is denied.

## FACTUAL BACKGROUND

Cablevision is one of the largest operators of cable television systems in the United States. Memorandum of Law in Support of Cablevision's Motion to Quash or Modify Order, dated July 30, 2001 (hereinafter, "Cablevision Mem."), at 2. Under the names Optimum Online and Optimum@Home (collectively "Optimum"), Cablevision also offers high-speed internet access and related services to subscribers through its cable system. *Id.*

On July 20, 2001, the United States made an *ex parte* application pursuant to 18 U.S.C. § 2703(d) for an Order requiring Cablevision to provide information to the Government concerning a subscriber to Cablevision's cable internet service. In this application, the Government offered "specific and articulable facts" showing that there were "reasonable grounds to believe that the subscriber records are relevant and material to an ongoing criminal investigation" as required by 18 U.S.C.

§ 2703(d). The Court granted the Government's application on July 24, 2001, by written order (the "July 24 Order" or "Order"). The Order directed Cablevision to provide the Government with "any and all subscriber information ... with respect to" a particular internet provider address associated with the subscriber. This address was identified in the Order by a nine-digit number.

The Order requires Cablevision to provide the Government with the subscriber's name, home address, telephone number, e-mail address and any other identifying information Cablevision may have, such as date of birth, social security number, driver's license number and billing information. The Order also requires Cablevision to provide the Government with information regarding any accounts opened by the subscriber and any information concerning any hardware that was installed to establish a cable connection for the subscriber. Cablevision also must furnish the Government with information concerning Optimum internet provider addresses used by the subscriber, including such information as connection and disconnection times, the method of connection, data transfer volume, and other information pertaining to the internet provider addresses.

Finally, the Order directs that Cablevision "not disclose the existence of the investigation to the listed subscriber of the IP address, or to any other person, unless or until otherwise ordered by this Court." Objecting to this provision, Cablevision has moved the Court for an Order modifying or quashing the July 24 Order. The Government has opposed this motion.

## DISCUSSION

Cablevision does not contest the portions of the July 24 Order requiring it to provide the Government with information regarding its customer. It objects solely to the portion of the Order that prohibits it from disclosing the existence of the Order to the customer. While Cabelevision concedes that this non-disclosure provision is valid under the Electronic Communication Privacy Act, 18 U.S.C. § 2701 *et seq.* (the "ECPA"), it contends that the provision is inconsistent with its obligations under the Cable Communications Policy Act of 1984, Pub.L. 98–549, 98 Stat. 2779 (codified in various sections of 47 U.S.C.) (hereinafter, the "Cable Act"). The Cable Act (unlike the ECPA) requires a cable operator to notify a subscriber about whom it releases information, even if the information is released to the Government pursuant to a court order. 47 U.S.C. §§ 551(c)(2)(B), 551(h). Because of this purported obligation under the Cable Act, Cablevision argues that "the [July 24] Order places an undue burden on Cablevision, by requiring Cablevision to choose between and reconcile two conflicting statutory schemes." Affidavit of Greg Haber, Esq. in Support of Cablevision's Motion to Quash or Modify Order at ¶ 8. Cablevision claims that compliance with the Order, although authorized under the ECPA, would place Cablevision in violation of the Cable Act and its notice provision, and accordingly the Order must be quashed or modified to alleviate the "undue burden," 18 U.S.C. § 2703(d), created by the allegedly conflicting requirements of the two statutes.

The ECPA provides a statutory mechanism under which the Government can obtain a court order directing a company that provides "electronic communication service" to disclose certain subscriber records in those cases where the Government sets forth "specific and articulable facts showing that there are reasonable grounds to believe that [the requested information is] relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Where the Government seeks

records related to a subscriber of the electronic communications service, as is the case here, the Government "is not required to provide notice to a subscriber or customer." 18 U.S.C. § 2703(c)(2). The provider of the electronic communication or remote computing services who complies with an order issued under the ECPA is shielded from liability for any claim relating to the disclosure. 18 U.S.C. § 2703(e).

It is undisputed that the ECPA covers Cablevision's internet service providers, including Optimum. The statute is aimed at any "provider of electronic communication service." This term is defined as a service "which provides to users thereof the ability to send or receive wire or electronic communications." *See* 18 U.S.C. §§ 2510(15), 2711(1). The legislative history of the ECPA reveals that it was intended as an expansion of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.*, which had governed telephone communications. *See* S.Rep. No. 99–541 at 2 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3556 (Title III applied only "where the contents of a communication can be overheard and understood by the human ear"). Title III was amended in 1986 because of the belief that it had not "kept pace with the development of communications and computer technology." *Id.* The ECPA was intended to apply "to large-scale electronic mail operations, computer-to-computer data transmissions, cellular and cordless telephones, paging devices, and video teleconferencing." *Id.* Thus, it has been repeatedly recognized that the ECPA applies to electronic communications transmitted via the internet. *See, e.g., Gucci America, Inc. v. Hall & Assocs.*, 135 F.Supp.2d 409, 419 n. 20 (S.D.N.Y.2001); *United States v. Kennedy*, 81 F.Supp.2d 1103, 1111 (D.Kan.2000); *United States v. Hambrick*, 55 F.Supp.2d 504, 507 (W.D.Va.1999); *Jessup–Morgan v. America Online, Inc.*, 20 F.Supp.2d

1105, 1108 (E.D.Mich.1998); *McVeigh v. Cohen*, 983 F.Supp. 215, 219 (D.D.C.1998).

Were the provider of the internet service in this case a telephone dial-up service provider, such as America Online or a telephone company, there would be no grounds for the present motion. What brings this case before this Court is that Optimum provides the internet service at issue not through a dial-up connection but through Cablevision's own cable system, identified by Cablevision as "the broadband capacity of its hybrid fiber-optic/coaxial cable network." Cablevision Mem. at 2. Cable companies are the subject of a pre-existing regulatory scheme represented in part by the Cable Act, enacted in 1984 to cover such diverse areas as the establishment of cable franchises (47 U.S.C. §§ 541–542); the renewal of cable franchises (47 U.S.C. § 546); standards for local regulation of cable companies (47 U.S.C. §§ 543–544); and the encouragement of diversity in cable content (47 U.S.C. §§ 531–532).

Contained within the 1984 Cable Act was a section entitled "protection of subscriber privacy," which was codified at 47 U.S.C. § 551. This section bars a "cable operator" from disclosing personally identifiable information regarding a subscriber unless certain requirements are met. 47 U.S.C. § 551(c). A separate subsection of section 551, however, permits a "governmental entity" to obtain access to information concerning a subscriber. 47 U.S.C. § 551(h). The government entity may obtain access when it "offers clear and convincing evidence that the subject of the information is reasonably suspected of engaging in criminal activity and that the information sought would be material evidence in the case." 47 U.S.C. § 551(h)(1). The subject of the information, however, must be afforded "the opportunity to appear and contest such entity's claim." 47

U.S.C. § 551(h)(2). *See also* 47 U.S.C. § 551(c)(2)(B) (cable operator may disclose subscriber information pursuant to court order "if the subscriber is notified of such order by the [cable operator]").

Whether the Cable Act in fact applies to the information sought in this case is a matter of some dispute. Pointing to a separate section of the Cable Act, the Government argues that the Cable Act governs "cable service," which is defined as the "one-way transmission to subscribers of ... video programming or ... other programming service, and ... subscriber interaction, if any, which is required for the selection or use of such video programming or other programming service." 47 U.S.C. § 522(6)(A). Because internet service does not involve the "one-way transmission" of service, the Government argues, the Cable Act does not even apply to internet service. Two Courts of Appeals have reached the same conclusion, though neither involved the disclosure provision at issue in this case. *See AT & T v. City of Portland*, 216 F.3d 871, 877 (9th Cir.2000) (local cable franchising authority could not require cable company to open access to its cable broadband network for competing internet service providers); *Gulf Power Co. v. F.C.C.*, 208 F.3d 1263, 1279 (11th Cir.2000) (FCC lacked authority to regulate rent to be paid by cable and telecommunications services providers for attachment of wires to power companies' poles), *cert. granted on other grounds,* —— U.S. ——, 121 S.Ct. 879, 148 L.Ed.2d 789 (2001).

For its part, Cablevision notes that one District Court has reached an opposite result, *see MediaOne Group, Inc. v. County of Henrico*, 97 F.Supp.2d 712, 715 (E.D.Va.2000), *affd. on other grounds*, 257 F.3d 356, 365 (4th Cir.2001), and that, in addition, the scope of the Cable Act is a hotly-contested topic that is the subject of an ongoing proceeding before the FCC. *See In the Matter of Inquiry Concerning High–Speed Access to the Internet Over Cable and Other Facilities*, GEN Docket No. 00–185, Notice of Inquiry (released September 28, 2000), at ¶¶ 15–17 (reproduced at 2000 WL 1434689); *accord MediaOne Group, Inc.*, 257 F.3d 356 ("the issue of the proper regulatory classification of cable modem service ... is complex and subject to considerable debate"). Understandably, courts have been loath to enter into the thicket of the general applicability of the Cable Act. *See, e.g., Kennedy*, 81 F.Supp.2d at 1111 (declining to decide scope of Cable Act because defendant in any event would not be entitled to suppression of the challenged evidence); *In re United States*, 36 F.Supp.2d 430, 433 (D.Mass.1999) (declining to "issue an opinion on the ultimate reconciliation of the statutory conflict" between the ECPA and the Cable Act).

This Court too does not believe that resolution of this matter requires it to decide whether the Cable Act as a whole applies to cable companies providing internet service through cable connections. Even if this Court were to accept the premise that Congress intended the term "cable service" to apply to internet service provided by cable companies, Congress has amended section 551 of the Cable Act to indicate its intention that the portion of section 551 relating to governmental access does not apply to cable internet service subscribers.

To understand this issue requires some background. Unlike much of the rest of the Cable Act, section 551 applies not merely to "cable service" but to "cable service or other service." One use of this phrase occurs in section 551(a)(1), which requires a cable operator to provide a written privacy notice to all subscribers to "cable service or other service." The cable

operator must include in this privacy notice an explanation of its obligations regarding disclosure to a governmental entity under 551(h). *See* 47 U.S.C. § 551(a)(1)(E). More specifically, this section requires the operator to provide notice to a subscriber regarding the potential for the cable company to disclose "personally identifiable information" relating to such "cable service or other service." 47 U.S.C. § 551(a)(1)(A). The term "personally identifiable information" in this section thus relates to information regarding subscribers to "cable service or other service." Section 551(c)(2) summarizes the instances where a cable operator may reveal such "personally identifiable information," noting that such information may be disclosed to a governmental entity under section 551(h) where there has been notice to the subscriber. *See* 47 U.S.C. § 551(c)(2)(B).

▮ Were it clear that "cable service or other service" included internet service, there would be no question that section 551(h)—including its notice provision—would have been intended to apply to the cable internet service at issue in the present case. In 1992, however, Congress enacted an amendment to the Cable Act. In that amendment, Congress added a provision to the definitional section included within section 551(a) that for the first time defined the term "other service" in the phrase "cable service or other service." That new definition stated that the term "other service" includes "any wire or radio communications service provided using any of the facilities of a cable operator that are used in the provision of cable service." 47 U.S.C. § 551(a)(2)(B). This specific definition of "other service" plainly includes internet service transmitted via a cable system. Indeed, the term "wire or

radio communications service" is similar to the term used to define the scope of the ECPA, *see* 18 U.S.C. § 2510(15) (relating to providing a subscriber with the ability to send or receive "wire or electronic communications"), which both parties agree covers internet service. Moreover, Optimum's internet service is provided "using . . . the facilities of a cable operator that are used in the provision of cable service." Thus, regardless of the meaning that may be attached to the term "cable service" by itself, Congress in 1992 enacted a more specific definition of "other service" that covers internet service provided through a cable system.

Yet at the same time that Congress did so, it also provided that this definition of "other service" applies only "for purposes of [section 511], *other than subsection (h).*" 47 U.S.C. § 551(a)(2) (emphasis added). In other words, Congress expressly exempted subsection (h)—the governmental disclosure provision—from its definition of "other service." The only logical conclusion is that Congress did not intend that internet service provided by a cable company be included within the requirements of subsection (h).

This interpretation is confirmed by the legislative history of the 1992 amendment, which indicates that the exclusion of wire or radio communications from definition of "other services" occurred because of the "concern[ ] that such a broad scope may interfere with the legitimate need for access to radio or wire communications recognized in [47 U.S.C. § 605][1] and elsewhere in the law." *See* H.R.Rep. No. 102–628, § 8 (1992) (reproduced at 1992 WL 166238 at \*107). Thus, the legislative history confirms that Congress wished to narrow the scope of the potential areas in

---

**1.** 47 U.S.C. § 605 in turn makes reference to 18 U.S.C. §§ 2510–2522, which includes provisions regarding governmental wiretapping.

which the Government would be required to comply with subsection (h) by excluding its definition of "other service" from that subsection.

The net result of this analysis is that subsection (h), including its requirement of disclosure to cable subscribers, must be read to apply only to a narrow definition of cable service that would exclude the provision of internet access by a cable company. Because the ECPA is left as the only statute that applies to the information sought in this matter—and because the ECPA requires no notice to the internet subscriber—Cablevision's motion to quash or modify the July 24 Order is denied.

SO ORDERED.