**Brian D. HAUSE, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2000–CA–002006–MR.**

Court of Appeals of Kentucky.

Oct. 19, 2001.

Discretionary Review to Supreme Court Denied Sept. 18, 2002.

Raymond S. Bogucki, Jesse P. Melcher, Matthew T. Sanning, Bogucki, Knoebel & Vice, P.S.C., Maysville, KY., for Appellant.

Albert B. Chandler III, Attorney General, J. Hamilton Thompson, Assistant Attorney General, Frankfort, KY., for Appellee.

Before DYCHE, EMBERTON and HUDDLESTON, Judges.

*OPINION*

HUDDLESTON, Judge:

Brian D. Hause entered a conditional plea of guilty pursuant to Kentucky Rule of Criminal Procedure (RCr) 8.09 to charges of possession of matter portraying a minor in a sexual performance[1] and distribution of matter portraying a minor in a sexual performance[2] and was sentenced to three years' imprisonment. He appeals the denial of his motion to suppress materials that formed the basis of the charges lodged against him.

In the spring of 1999, Detective Michael DiMatteo of the San Bernadino, California, Sheriff's Department, began investigating the distribution of child pornography on the Internet. DiMatteo accessed the Internet by way of America On Line (AOL), an Internet service provider, and used a private "chat-room"[3] to find individuals who were distributing child pornography.

DiMatteo accessed the chat-room and started a computer program that generated a list of screen names being used by individuals in the chat-room. DiMatteo then left the chat-room without having conversed with anyone. Shortly thereafter, DiMatteo began receiving e-mail messages from individuals who had been in the chat-room. DiMatteo received two e-mail messages from one of the chat-room users identified as Bh0810. These messages from Bh0810 each contained information concerning the originator of the messages and when they had been sent. And, each message had a photograph attached.[4]

After receiving these images, DiMatteo prepared an affidavit and presented it to a California magistrate. The magistrate found probable cause to obtain the AOL subscriber information for Bh0810 and several other screen names.

DiMatteo served this warrant on AOL at its headquarters in Dulles, Virginia, where the subscriber records were maintained. AOL complied with the warrant and pro-

---

1. Ky.Rev.Stat. (KRS) 531.335.

2. KRS 531.340.

3. The "chat-room" was used by individuals with a special interest in children between the ages of four and eight.

4. The first image was of a nude, young, female child posing with an adult woman touching the vaginal area of the child. This image was captioned "OHMOM." The second image was of a nude, young, female child with a nude adult male positioned to penetrate the child's vaginal area with his penis. This image was captioned "10SLT."

vided DiMatteo with the requested subscriber records.

The subscriber records revealed that Bh0810 was Brian Hause of Lexington, Kentucky. Armed with this information, DiMatteo contacted the local field office of the Federal Bureau of Investigation. A member of a special task force of the F.B.I. contacted Detective Jesse Harris of the Lexington, Kentucky, Police Department. Subsequently, Harris received a copy of the affidavit prepared by DiMatteo, the search warrant issued in California, the subscriber records of Hause, the photographic images sent by Bh0810, and other documents relating to the investigation.

After verifying Hause's address, Harris prepared an affidavit in support of a search warrant and, subsequently, a district court judge issued the warrant. The warrant was served and Hause's computer, notes, papers, pictures and other items were seized by the police. The search of Hause's computer revealed several files containing depictions of child pornography.

On December 8, 1999, Hause was indicted on the charges to which he subsequently entered a conditional guilty plea. Before entering his conditional guilty plea, Hause filed several motions to suppress the evidence seized and a motion to have Kentucky Revised Statutes (KRS) 531.330 and 531.340 declared unconstitutional. All these motions were denied.

On appeal, Hause asserts that: (1) the circuit court erred in failing to declare KRS 531.330 and KRS 531.340 unconstitutionally overbroad; (2) the court erred in failing to declare KRS 531.330 unconstitutionally vague; (3) the court erred in fail-

ing to suppress all evidence seized in Virginia; (4) the court erred in failing to suppress all evidence seized in Kentucky because it was obtained as fruit of the poisonous tree; (5) the court erred in failing to suppress all evidence seized in Kentucky because the information that served as the basis for the warrant was stale and no-good faith exception applies; and (6) the court erred in failing to suppress all evidence seized in Kentucky because the search warrant was overbroad.

## *Are KRS 531.330 and KRS 531.340 Unconstitutionally Overbroad?*

Hause argues that KRS 531.340 is unconstitutionally overbroad because it allows for the prosecution of individuals possessing material portraying a sexual performance by a person over the age of eighteen. Hause also argues that KRS 531.330 is unconstitutionally overbroad because it regulates protected speech in that a person could be prosecuted for distribution of matter portraying a sexual performance of a virtual or computer-generated person that appears to be a minor.

A challenge to the constitutionality of an act of the General Assembly must "necessarily begin with the strong presumption in favor of constitutionality and [the Court] should so hold if possible." [5] "A challenge to a statute on the basis that it is overbroad is essentially an argument that in an effort to control impermissible conduct, the statute also prohibits conduct which is constitutionally permissible." [6] "[A] statute may be perfectly clear and unambiguous but nevertheless unconstitutional if it prohibits constitutionally pro-

---

**5.** *Brooks v. Island Creek Coal Co.*, Ky.App., 678 S.W.2d 791, 792 (1984) (citations omitted).

**6.** *Commonwealth v. Ashcraft*, Ky.App., 691 S.W.2d 229, 232 (1985), *citing Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

tected activities or may be enforced in an arbitrary manner." [7]

The statute under attack, KRS 531.330, provides that:

(1) For purposes of KRS 529.030, 530.070, 531.080 and 531.300 to 531.370, any person who appears to be under the age of eighteen (18), or under the age of sixteen (16), shall be presumed to be under the age of eighteen (18), or under the age of sixteen (16), as the case may be.

(2) In any prosecution under KRS 529.030, 530.070, 531.080 and 531.300 to 531.370 the defendant may prove in exculpation that he in good faith reasonably believed that the person involved in the performance was not a minor.

(3) The presumption raised in subsection (1) of this section may be rebutted by any competent evidence.

■ Arguably, a person could portray a constitutionally permissible sexual performance involving an individual who is not a minor, but appears to be under the age of eighteen; however, KRS 531.330 does not prohibit that conduct. All that KRS 531.330 establishes is an evidentiary presumption and the burden shifting analysis that courts are to employ when an individual is prosecuted under KRS 529.030, 530.070, 531.080 or 531.300 to 531.370. Therefore, KRS 531.330 is not unconstitutionally overbroad.

KRS 531.340 provides that:

(1) A person is guilty of distribution of matter portraying a sexual performance by a minor when, having knowledge of its content and character, he:

(a) Sends or causes to be sent into this state for sale or distribution; or

(b) Brings or causes to be brought into this state for sale or distribution; or

(c) In this state, he:

1. Exhibits for profit or gain; or

2. Distributes; or

3. Offers to distribute; or

4. Has in his possession with intent to distribute, exhibit for profit or gain or offer to distribute, any matter portraying a sexual performance by a minor.

(2) Any person who has in his possession more than one (1) unit of material coming within the provision of KRS 531.300(2) shall be rebuttably presumed to have such material in his possession with the intent to distribute it.

(3) Distribution of matter portraying a sexual performance by a minor is a Class D felony.

Hause does not argue that he committed no crime;[8] the argument preserved and presented on appeal is whether KRS 531.340 is unconstitutionally overbroad. While we recognize the principle that "[t]here can be no penalty if there is no crime[,]"[9] we also acknowledge that "the

---

**7.** *Commonwealth v. Foley*, Ky., 798 S.W.2d 947, 952 (1990).

**8.** Hause contended in a motion filed on May 16, 2000, that the alleged depictions of minors in a sexual performance "may well not be pictures of real people." Additionally, it was stipulated by all parties on June 29, 2000, that the Commonwealth could not produce the names and addresses of the children alleged to be depicted in the images in question. However, in the judgment entered on Hause's guilty plea, the circuit court found that Hause understood the nature of the charges against him and the elements of the charges against him. Additionally, the court found that there was an actual basis for Hause's plea. In the petition to enter a plea of guilty signed by Hause, Hause acknowledged that the court would accept his guilty plea in reliance on the fact that Hause was guilty of the crime of distribution of matter portraying a sexual performance by a minor.

**9.** *Estes v. Commonwealth*, Ky., 952 S.W.2d 701, 704 (1997) (Cooper, J., concurring).

overbreadth doctrine allows challenges from one whose own conduct may be clearly unprotected[.]" [10]

Hause argues that KRS 531.340 is unconstitutionally overbroad because virtual child pornography is protected speech and cannot be regulated by the government. Hause directs our attention to *Free Speech Coalition v. Reno*[11] in which it was held that "Congress has no compelling interest in regulating sexually explicit materials that do not contain visual images of actual children[,]"[12] and, therefore, making criminal "the generation of images of fictitious children engaged in imaginary but explicit sexual conduct [is prohibited by the First Amendment to the United States Constitution]."[13]

 While this Court is not bound by the decision in *Free Speech Coalition v. Reno*, its persuasive value can be considered.[14] However, upon review of *Free Speech Coalition*, we find that the terms[15] of the federal statute[16] at issue in that case, which were held to be unconstitutionally vague and overbroad,[17] are not found in KRS 531.340. Therefore, Hause's reliance on *Free Speech Coalition* is misplaced. Unlike the statute in *Free Speech Coalition*, KRS 531.340 requires proof that a person distributed "matter portraying a sexual performance by a minor[.]" According to KRS 531.330, minors are *persons*.

[L]aws which create crime should be sufficiently explicit that men subject to [its] penalties may know what acts are forbidden, and before a man can be punished, his case must be plainly within the statute. Crime is not to arise upon doubtful construction of a statute where a person of ordinary intelligence, reading the statute, would not understand from it that the act was forbidden. Criminal statutes are not cunningly and darkly framed to catch the unwary, and they are not extended for this purpose beyond the fair and natural meaning of the words used.[18]

"[T]he law never favors penalties and will not exact them unless the statute is clear and convincing."[19] Therefore, "if [a] statute [is] so ambiguous as to leave reasonable minds in doubt, [a] penalty [will] not be exacted beyond the letter of the statute."[20]

 It is an elementary principle that where the validity of a statute is assailed, and there are two possible interpretations, by one of which the statute would be con-

---

10. *Ashcraft, supra*, n. 6, at 232.

11. 198 F.3d 1083 (9th Cir.1999), *cert. granted sub nom. Ashcroft v. Free Speech Coalition*, 531 U.S. 1124, 121 S.Ct. 876, 148 L.Ed.2d 788 (2001).

12. *Id.* at 1092, 121 S.Ct. 876.

13. *Id.* at 1086, 121 S.Ct. 876.

14. *See Roman Catholic Diocese of Covington v. Secter*, Ky.App., 966 S.W.2d 286, 289 (1998).

15. The terms that were held to be unconstitutionally vague and overbroad were "appears to be a minor" and "conveys the impression."

16. 18 U.S.C. § 2256.

17. Three federal circuits have held that the statute at issue in *Free Speech Coalition* is not unconstitutionally void for vagueness nor overbroad. *See United States v. Fox*, 248 F.3d 394 (5th Cir.2001); *United States v. Acheson*, 195 F.3d 645 (11th Cir.1999); *United States v. Hilton*, 167 F.3d 61 (1st Cir.1999).

18. *Commonwealth v. Adams Express Co.*, 123 Ky. 720, 97 S.W. 386, 387 (1906) (citation omitted).

19. *Commonwealth ex rel. Martin v. Tom Moore Distillery Co.*, 287 Ky. 125, 152 S.W.2d 962, 964 (1939).

20. *Id.* at 965.

stitutional, and by the other it would not, it is the duty of the court to adopt that construction which would uphold it.[21]

█ In construing a statute, "words and phrases employed by the lawmaking body must be given their plain and ordinary meaning according to popular usage, unless they have acquired a technical sense, in which event, they will be given such accepted technical meaning."[22] "In the construction of [ ] statutes[,] simple words must be given their ordinary meaning and cannot be given a strained interpretation for the purpose of effecting a result not contemplated by the members of the assembly which framed the provisions under consideration."[23]

The Encarta World English Dictionary defines "person" as an individual human being.[24] The word "person" is also defined in several Kentucky statutes.[25] The general nature of the definition of "person" is represented in KRS 139.080 in which "person" is defined as: "any individual, firm, copartnership, joint venture, association, social club, fraternal organization, corporation, estate, trust, business trust, receiver, trustee, syndicate, cooperative, assignee, governmental unit or agency, or any other group or combination acting as a unit."

We have held that basic reparations benefits were not available to the estate of a decedent killed in an automobile accident because "[t]he language of the law as it relates to the word 'person' refers only to living human beings and not to the estate of a deceased individual. The word 'person' as used in the definition of work loss in KRS 304.39–020(5)(b) also *refers only to living human beings.*"[26] We have found no Kentucky statutory or decisional definition stating that the term "person" includes computer-generated or virtual persons. Thus, the argument that KRS 531.340 is overbroad because it could be applied to prosecute an individual who has distributed virtual or computer-generated child pornography is without merit. The reach of KRS 531.340 is simply not as broad as Hause says it is. The word "person" has not gained, as an accepted, ordinary or technical meaning, a definition that includes virtual or computer-generated persons.

█ "[T]he burden is upon the prosecution to prove the accused guilty beyond a reasonable doubt of every essential element of the crime charged, [and] an accused has the right to rely upon failure of the prosecution to establish such proof."[27] In a prosecution brought against an individual accused of violating KRS 531.340, it is incumbent upon the Commonwealth to

**21.** *Gibson v. Commonwealth,* 209 Ky. 101, 272 S.W. 43, 44 (1925).

**22.** *Baker v. White,* 251 Ky. 691, 65 S.W.2d 1022, 1024 (1933) (citations omitted). *See also Revenue Cabinet v. JRS Data Sys.,* Ky. App., 738 S.W.2d 828, 829 (1987)("Ordinarily, we are bound to construe all statutory words and phrases according to the common and approved usage of the language. However, words which have acquired a peculiar and appropriate meaning in the law must be construed according to such other meaning."); KRS 446.080(4).

**23.** *Inter–County Rural Elec. Coop. Corp. v. Reeves,* 294 Ky. 458, 171 S.W.2d 978, 981 (1943) (citations omitted).

**24.** *See* Encarta World English Dictionary 1346 (1st ed.1999).

**25.** *See, e. g.,* KRS 131.600(2), KRS 287.030(1), KRS 318.010(9), KRS 418.085 and KRS 500.080.

**26.** *Gregory v. Allstate Ins. Co.,* Ky.App., 618 S.W.2d 582, 582–83 (1981)(emphasis supplied).

**27.** *Whorton v. Commonwealth,* Ky., 570 S.W.2d 627, 629 (1978).

prove beyond a reasonable doubt that the "person" depicted in the matter portraying a minor in a sexual performance is a real person. Therefore, we hold that KRS 531.340 is not unconstitutionally overbroad because the distribution of virtual or computer-generated child pornography is not within the reach of the criminal activity prohibited by KRS 531.340.

### Is KRS 531.330 Unconstitutionally Vague?

Hause asserts that the language in the statute, "appears to be under the age of eighteen," does not give the average person a clear standard by which an individual can determine whether his or her conduct is unlawful and, therefore, KRS 531.330 is unconstitutionally vague.

■ "The void-for-vagueness doctrine emanates from the due process provisions of the United States and Kentucky Constitutions. To survive vagueness analysis a statute must provide 'fair notice' of prohibited conduct and contain 'reason-ably [sic] clear' guidelines to thwart 'arbitrary and discriminatory' enforcement."[28] Unlike an overbreadth challenge, "a vagueness challenge focuses squarely on the conduct of the party before the court[.]"[29]

■ Again, Hause considers only some language in the statute without giving consideration to the full meaning and intended application of the statute. As previously mentioned, KRS 531.330 establishes an evidentiary presumption and the burden shifting analysis that courts are to employ when an individual is prosecuted under

KRS 529.030, 530.070, 531.080 or 531.300 to 531.370. Any person prosecuted under these statutes is permitted to rebut the presumption by competent evidence,[30] and that person "may prove in exculpation that he in good faith reasonably believed that the person involved in the performance was not a minor."[31]

KRS 531.330 does not fail for vagueness. KRS 531.330, in conjunction with the statutes that it governs, provides fair notice of prohibited conduct and contains reasonably clear guidelines to thwart arbitrary and discriminatory enforcement. We are not troubled by the language of KRS 531.330 because the language does not establish an irrebuttable presumption.

Further, Hause asserts that the language of KRS 531.330 allows and encourages arbitrary and discriminatory enforcement of the law as evidenced by the inherent, subjective perspective of law enforcement personnel. "Vague statutes are [ ] prohibited on the basis that they fail to provide explicit standards for those who enforce them, thus permitting discriminatory and arbitrary enforcement."[32] But, "[t]he possibility of unreasonable enforcement of any statutory prohibition always exists no matter how precise the statute and judicial interpretations of it."[33]

We recognize that the specter of unreasonable enforcement is always present. However, we disagree with Hause's bald assertion that the language of KRS 531.330 allows and encourages arbitrary and discriminatory enforcement of the law

28. *Commonwealth v. Kash*, Ky.App., 967 S.W.2d 37, 42 (1997) (citations omitted).

29. *Id.*

30. KRS 531.330(3).

31. KRS 531.330(2).

32. *Raines v. Commonwealth*, Ky.App., 731 S.W.2d 3, 4 (1987), *citing Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).

33. *Payne v. Commonwealth*, Ky., 623 S.W.2d 867, 871 (1981).

as evidenced by the inherent, subjective perspective of law enforcement personnel. We find no evidence in the record, nor are we aware of any objective evidence, that judges, jurors, prosecuting attorneys or law enforcement officers [34] hold inherent subjective enforcement perspectives. The Kentucky Supreme Court has recognized that "[a] conviction must be obtained through the proper and lawful admission of evidence in order to maintain the integrity and fairness that is the bedrock of our jurisprudence." [35] Hause's allegation that an inherent, subjective perspective exists in law enforcement is an unsubstantiated assault on the bedrock principles of integrity and fairness that exist in law enforcement.

We must take a "man on the street" approach to analyzing the language of KRS 531.330.[36] The analysis of this case and the resultant answers are exactly that same as announced in *Hardin v. Commonwealth:* [37]

> Has the statute defined what can or cannot be done with such clarity that persons upon whom it is designed to operate can understand it? We think that it does. Does the statute provide fair warning[?] We think it does. So as to avoid arbitrary treatment, does it provide explicit standards for those persons who apply it—the judge, the jury, the prosecuting attorney, and the arresting officers? We think that it does. Does it

prohibit the exercise of any constitutional freedom? We think it does not.[38] In short, we find no merit to Hause's argument that KRS 531.330 is unconstitutionally void for vagueness.

### *Was the Evidence Found in Virginia Obtained Unlawfully?*

Hause argues that the warrant issued in California and served on AOL, at its home office in Dulles, Virginia, did not conform to Virginia law concerning compelled production of evidence and that the warrant was not properly served under the requirements of California law.

▂▂▂▂ Hause begins by stating that a court must have jurisdiction over a party to compel that party to perform some act or to submit to a search.[39] While we find no fault with this statement, Hause, as a threshold requirement, must show that he had a reasonable expectation of privacy in the evidence obtained from AOL.[40] Without a showing that Hause had a reasonable expectation of privacy in the evidence obtained from AOL, Hause "lack[s] standing to complain of the search's alleged illegality." [41] This burden of showing that standing exists must be met before launching an attack on the evidence seized in an effort to have that evidence suppressed.[42] "To establish standing to attack a search, one must establish a legitimate expectation of privacy in the searched property." [43]

---

34. *See Hardin v. Commonwealth,* Ky., 573 S.W.2d 657 (1978)(recognizing that "law enforcement" is not limited to police officers).

35. *Newkirk v. Commonwealth,* Ky., 937 S.W.2d 690, 695–96 (1996), *quoting Commonwealth v. Dunkle,* 529 Pa. 168, 602 A.2d 830, 838 (1992).

36. *Hardin, supra,* n. 34, at 660.

37. *Supra,* n. 34.

38. *Id.* at 660.

39. *See Burnham v. Superior Court,* 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990).

40. *See Cormney v. Commonwealth,* Ky.App., 943 S.W.2d 629 (1996).

41. *Id.* at 631.

42. *Id.*

43. *Foley v. Commonwealth,* Ky., 953 S.W.2d 924, 934 (1997) (citations omitted).

██ Standing must have been raised before the circuit court, and the Commonwealth should secure a ruling from the court, before this Court will entertain a standing challenge.[44] While the circuit court did not specifically refer to the issue of standing, a ruling was made on Hause's motion to suppress the evidence, and the question of whether Hause had a reasonable expectation of privacy in the evidence obtained from AOL was raised, considered and ruled upon, by the court.

While we disagree with the circuit court's analysis on this issue, we agree with its ruling that denied Hause's motion to suppress the evidence obtained from AOL. The circuit court held that Hause could have no reasonable expectation of privacy in the evidence recovered from AOL because Hause was involved in illegal activity. This holding was premised on AOL's privacy agreement, with which Hause had agreed to abide, that said AOL would release specific information about a subscriber's account in compliance with valid legal process.

██ This is putting the cart before the horse. Even if the search conducted at the AOL offices in Virginia had been conducted without a warrant, Hause "had the burden of proving that he had retained a reasonable expectation of privacy in [the evidence obtained]."[45] AOL's privacy agreement does not weigh in Hause's favor in this analysis; however, we note, without deciding, that, standing alone, these "boilerplate" agreements may not be enough to overcome a reasonable expectation of privacy held by subscribers. "There is no constitutional right to suppression [of evidence]."[46] A determination of whether the judicial remedy of suppression should be exercised to safeguard Fourth Amendment rights depends on whether a reasonable expectation of privacy exists.[47] "[A]n expectation of privacy is only reasonable where (1) the individual manifests a subjective expectation of privacy in the object of the challenged search; and (2) society is willing to recognize that subjective expectation as reasonable."[48] "The second element turns on 'whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment.' "[49] Section 10 of the Kentucky Constitution provides no greater protection than does the federal Fourth Amendment.[50] "The party seeking suppression must not only exhibit an expectation of privacy in the area, but the expectation must be one society is willing to acknowledge as reasonable."[51] The societal expectation "is one that society accepts as 'objectively reasonable.' "[52]

Hause asserts that he possessed a subjective expectation of privacy in his per-

**44.** *See Clark v. Commonwealth,* Ky.App., 868 S.W.2d 101, 102 (1993).

**45.** *See Cormney, supra,* n. 40, at 631.

**46.** *Crayton v. Commonwealth,* Ky., 846 S.W.2d 684, 689 (1992).

**47.** *See id.*

**48.** *See LaFollette v. Commonwealth,* Ky., 915 S.W.2d 747, 749 (1996) (citation omitted).

**49.** *Id., quoting Oliver v. United States,* 466 U.S. 170, 182–83, 104 S.Ct. 1735, 1743, 80 L.Ed.2d 214 (1984).

**50.** *See Estep v. Commonwealth,* Ky., 663 S.W.2d 213 (1983).

**51.** *LaFollette, supra,* n. 48, at 749, *citing Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576, 588 (1967) (Harlan, J., concurring).

**52.** *United States v. Hambrick,* 55 F.Supp.2d 504, 506 (1999), *quoting California v. Greenwood,* 486 U.S. 35, 39, 108 S.Ct. 1625, 100 L.Ed.2d 30, 36 (1988).

sonally identifiable information. However, "resolution of [whether Hause has a constitutionally protected expectation of privacy] hinges on whether [Hause's] expectation is one that society accepts as 'objectively reasonable.' "[53]

The objective reasonableness prong of the privacy test is ultimately a value judgment and a determination of how much privacy we should have as a society. In making this constitutional determination, [we] must employ a sort of risk analysis, asking whether the individual affected should have expected the material at issue to remain private.[54]

 "To have a reasonable expectation of privacy under the [United States] Supreme Court's risk-analysis approach to the Fourth Amendment, two conditions must be met: (1) the data must not be knowingly exposed to others, and (2) the Internet service provider's ability to access the data must not constitute disclosure."[55] Material that a person knowingly exposes to the public, even in his home or office, is not subject to Fourth Amendment protection.[56] "A person has no legitimate expectation of privacy in information he voluntarily turns over to third parties."[57]

 Here, Hause knowingly revealed his name and address to AOL and its employees. Hause also selected the screen name Bh0810. This screen name tied Hause to his true identity at AOL. AOL employees had ready access to these records in the normal course of business in keeping records for billing purposes. This ready access was further evidenced by AOL's ability to provide the subscriber records when the search warrant was served. As the United States Court of Appeals for the Sixth Circuit has recently held, an individual, such as Hause, lacks a Fourth Amendment privacy interest in his subscriber information because he communicated it to the system's operators.[58] In summary, we hold that Hause had no legitimate expectation of privacy in the materials and information provided by AOL. Thus, the circuit court properly denied Hause's motion to suppress that evidence.

### Was the Evidence Seized in Kentucky Fruit of the Poisonous Tree?

Hause's attack on the Kentucky warrant is premised entirely on the assertion that the information obtained from AOL, and subsequently used as the basis for the Kentucky warrant served at Hause's home, was unlawfully seized. Since we have determined that the materials and information obtained from AOL were not constitutionally protected, Hause's motion to suppress the evidence seized in Kentucky as fruit of the poisonous tree need not be addressed.

### Was the Kentucky Warrant Based on Stale Information?

 Hause asserts that the test for determining whether information that

53. *Id.* at 506.

54. *Id.* (Citation omitted).

55. *Id.* at 507.

56. *See Katz, supra,* n. 51.

57. *Hambrick, supra,* n. 52, at 508 (citations omitted).

58. *Guest v. Leis,* 255 F.3d 325, 336 (6th Cir. 2001). *See also United States v. Maxwell,* 45 M.J. 406, 415 (U.S.Ct.App. for Armed Services 1996) ("[T]he relationship of a computer network subscriber to the network is similar to that of a bank customer to a bank. So far as the company's records are concerned, there is no reasonable expectation that the records are private, and the customer has no control whatsoever over which employee may see the records."); and *United States v. Kennedy,* 81 F.Supp.2d 1103, 1110 (D.C.Kan. 2000).

forms the basis for a search warrant is so stale that the information cannot be used to establish probable cause to support the warrant is the test adopted in *United States v. Spikes*:[59]

> Instead of measuring staleness solely by counting the days on a calendar, courts must also concern themselves with the following variables: "the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?)[.]"[60]

This list of variables is based in sound reasoning, and we find that reasoning persuasive.

 We are also guided by other principles of law concerning search warrants and probable cause. First, in analyzing the validity of a search warrant, we look to the "totality of the circumstances."[61]

> [A]fter the fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' 'A grudging or negative attitude by reviewing courts toward warrants,' is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant 'courts should not invalidate . . . warrant[s] by interpreting affidavit[s] in

a hypertechnical, rather than a common-sense, manner.'[62]

Therefore, we will review the circuit court's application of the *Spikes* test.

 Hause contends that the information that served as a basis for the search warrant issued in Kentucky was stale because the information was 178 days old. The circuit court found that the Lexington police waited only six days after receiving information from the FBI before applying for a search warrant. The court recognized that a multi-state investigation had preceded the Kentucky warrant, and that this investigation had taken time. The court then undertook an analysis of the *Spike* variables rule.

Accepting Hause's recommendation that we follow the *Spikes* rule for determining staleness, the age of the material and information is not the sole consideration.[63] We must also consider the character of the crime. Distribution and possession of child pornography are not typically crimes that occur by chance. The circuit court found that individuals who look at child pornography collect that type of material. And, we must consider the criminal, generally. The court found that child pornography can be stored and that Hause conducted activities in his home. The fact that child pornography may be easier to obtain with the advent of the Internet does not destroy this hoarding characteristic. In addition, we must consider the thing to be seized. The court found that the information obtained from Hause was not perishable; it could be stored and accessed indefi-

---

**59.** 158 F.3d 913 (6th Cir.1998)(adopting the test from *Andresen v. State*, 24 Md.App. 128, 331 A.2d 78, 106 (1975)).

**60.** *Id.* at 923.

**61.** *See Crayton, supra,* n. 46; *see also Beemer v. Commonwealth,* Ky., 665 S.W.2d 912, 913 (1984).

**62.** *Beemer, supra,* n. 61, at 914 (citations omitted).

**63.** *Id.*

nitely. Finally, we must consider the place to be searched. Here, the court found that Hause used his home as a secure operational base. The court also noted that Hause informed a police officer that he was the only person who had access to his computer.

While evidence was introduced that could have been considered adverse to the findings made by the circuit court, under the totality of the circumstances we find no error in the analysis and conclusions reached by the court on the question of staleness. Having found no error on this issue, we need not consider whether the good faith exception should apply.

### Was the Kentucky Search Warrant Overbroad?

Suppression of evidence remains as a remedy "where the warrant is facially deficient by failing to describe the place to be searched or the thing to be seized." [64]

> [I]f it should appear that the affidavit failed to describe with particularity the place to be searched and the thing to be seized, or was untrue, misleading, or that the judicial officer merely acted as a rubber stamp for the police, then public policy would require suppression as

the essential purpose of the warrant would have been defeated.[65]

■ Here, the warrant described with particularity the place to be searched and the things to be seized. Hause's primary complaint is that the warrant was overbroad because it allowed the police to seize the hard drive on his computer. This hard drive is analogized, by Hause, to a container. However, "a warrant to search a home also provides authority to open closets, drawers and containers in which the object of the search might be concealed." [66] This warrant was not a General Warrant as was issued by the infamous Star Chamber of England.[67] Under the totality of the circumstances, probable cause existed to search the hard drive of Hause's computer.[68]

The judgment is affirmed.

EMBERTON, Judge, concurs.

DYCHE, Judge, concurs in result.

---

64. *Crayton, supra,* n. 46, at 688, *citing United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

65. *Id.* at 688.

66. *Estep, supra,* n. 50, at 215.

67. *See Helm v. Commonwealth,* Ky., 813 S.W.2d 816, 821 (1991)(Combs, J., dissenting).

68. *Guest v. Leis, supra,* n. 58, at 335.